Frederick **PARKINS**, et al.

v.

**UNITED STATES of America.**

Civ. No. 5–88–354 (WWE).

United States District Court,
D. Connecticut.

Nov. 17, 1993.

H. Gordon Hall, U.S. Attorney's Office, New Haven, CT, for U.S.

Garrett M. Moore, Moore & O'Brien, Cheshire, CT, Kathleen L. Nastri, Carmody & Torrance, Waterbury, CT, for Parkins, et al.

## SUPPLEMENTAL MEMORANDUM OF DECISION

EGINTON, Senior District Judge.

Helen Parkins brought this action individually and as Executrix of the estate of her deceased husband, Frederick Parkins, under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* ("FTCA"). The Amended Complaint alleges that because of the negligence of the doctors at the Veterans Administration Medical Center ("VAMC") in West Haven, Connecticut, Mr. Parkins became paralyzed and eventually died. Mrs. Parkins also included a claim for loss of consortium.

After five days of trial, the court issued a Memorandum of Decision and entered Findings of Fact and Conclusions of Law, pursuant to Fed.R.Civ.P. 52(a). The court found that Dr. Cambria of the VAMC failed to properly inform Mr. Parkins of the risk of paralysis before obtaining Mr. Parkins' consent to thoracoabdominal surgery and that Mr. Parkins would not have consented to the surgery if he had known that there was a one in ten chance of paralysis. The court found in favor of Mrs. Parkins on her loss of consortium claim. The court also determined that plaintiffs could not prevail on their wrongful death claim.

At the instruction of the court, the parties filed supplemental memoranda addressing the issue of damages. Plaintiffs seek damages for lost wages, expenses for various equipment and home renovations, pain and suffering and loss of consortium. In deter-

mining an appropriate damages award, the court incorporates the facts found in the original Memorandum of Decision dated August 25, 1993.

## DISCUSSION

 It is well settled that in an action brought under the FTCA, damages are determined in accordance with the law of the state in which the wrongful act or omission occurred. *Powers v. United States,* 589 F.Supp. 1084, 1102 (D.Conn.1984). Under Connecticut law, a plaintiff in a negligence action may recover past and future medical expenses, lost wages, and damages for pain and suffering. *Delott v. Roraback,* 179 Conn. 406, 426 A.2d 791 (1980). Connecticut law also permits a spouse to recover for loss of consortium occurring during the period between the accident and the death of the accident victim. *Ladd v. Douglas Trucking Co.,* 203 Conn. 187, 189, 523 A.2d 1301 (1987).

### *Lost Wages*

Plaintiffs seek to recover $58,240.00 in lost wages. They arrive at this figure by claiming that if Mr. Parkins had not suffered paralysis, he would have maintained an hourly pay of $7.00 and worked forty hours per week for four years. Defendant does not dispute that Mr. Parkins would have maintained full-time employment at $7.00 per hour. Instead, defendant contends that the amount of lost wages must reflect Mr. Parkins' life expectancy in the event that he declined thoracoabdominal surgery.

The evidence presented at trial indicates that if Dr. Cambria had fully apprised Mr. Parkins of the risk of paralysis associated with thoracoabdominal surgery, Mr. Parkins would not have consented to the operation. Mr. Parkins would have accepted the greater likelihood of death. The government adduced expert testimony addressing the risk of death in the event that Mr. Parkins declined surgery. Without surgery, Mr. Parkins faced an annual risk of nearly 20% that the abdominal portion of his aneurysm would rupture. A rupture of this nature would

most certainly result in Mr. Parkins' death. Scientific studies further indicated that patients with thoracoabdominal aneurysms who opt not to have surgery face a 76% chance of death within two years.

After careful review of the evidence, the court finds that if Mr. Parkins had declined thoracoabdominal surgery, he would not have maintained employment for four years. In fact, it is unlikely that Mr. Parkins would work more than an additional two years. Therefore, without thoracoabdominal surgery, Mr. Parkins' life expectancy was two years from December 3, 1985, the date on which Dr. Cambria detected the disease. Plaintiffs are entitled to lost wages for two years of full time employment at $7.00 per hour, i.e., $29,120.00.[1]

### *Miscellaneous Economic Damages*

 Plaintiffs also seek to recover economic damages resulting from Mr. Parkins' paralysis. Specifically, plaintiffs claim that Mr. Parkins' paralysis necessitated the renovation of the Parkins' home and the purchase of special equipment. At trial, plaintiffs offered undisputed evidence establishing the following expenses:

| | |
|---|---|
| Elevator Installation: | $12,850.00 |
| Architectural Services: | $ 938.00 |
| Construction on Home: | $32,998.00 |
| Handicap Equipped Van: | $19,477.87 |
| Electric Scooter: | $ 3,184.90 |
| **TOTAL:** | **$69,448.77** |

The court finds, and defendant concedes, that these expenses are reasonable. Because these expenses resulted from the lack of informed consent, the court will award plaintiffs $69,448.77 in miscellaneous economic damages.

### *Pain and Suffering*

 Plaintiffs seek damages for Mr. Parkins' pain and suffering. They claim that an appropriate award should include (1) $50,000 for the period of hospitalization at the VAMC, in West Haven, Connecticut, (2) $70,000 for the period of hospitalization at the VAMC, in Bronx, New York, and (3) $500,000

---

1. Plaintiffs do not claim that Mr. Parkins' employer would have adjusted wages to account for inflation or to effectuate a pay raise.

pain and suffering from the date he was released from the hospital to the date of his death. Defendant does not dispute that damages for pain and suffering are warranted. Rather, defendant maintains that plaintiffs' recovery must account for the fact that Mr. Parkins would have had a reduced life expectancy without thoracoabdominal surgery.

A trial court may award damages for pain and suffering if the trier of fact has a reasonable basis for estimating an appropriate amount. An award of damages for pain and suffering is within the province of the trier of fact. *Vajda v. Tusla*, 214 Conn. 523, 533, 572 A.2d 998 (1990). "Proper compensation cannot be computed by a mathematical formula, and there is no iron-clad rule for the assessment of damages." *Manning v. Michael*, 188 Conn. 607, 616, 452 A.2d 1157 (1982).

It is necessary to revisit the facts of this case in order to reach an appropriate damages award for pain and suffering. Mr. Parkins was sixty-one years old when he was rendered paralyzed in December, 1985. Before his paralysis, Mr. Parkins enjoyed an active life. He held a full-time job and devoted his free time to family events and to various outdoor activities. Of course, Mr. Parkins lifestyle changed drastically due to his paralysis. Under the circumstances, the court finds that damages for pain and suffering are clearly warranted.

The more vexing question is how to quantify Mr. Parkins' pain and suffering. To value Mr. Parkins' pain and suffering it is useful to estimate Mr. Parkins' pain and suffering in terms of three distinct phases in his post-surgery life.

The first phase is that involving the period between December, 9, 1985 and February 4, 1986, during which Mr. Parkins was hospitalized at the VAMC in West Haven. In this period, Mr. Parkins learned that he was permanently paralyzed. He endured not only emotional strain but also a series of medical complications related to his paralysis. For this phase, the court finds that an award of $50,000 is appropriate to compensate Mr. Parkins for his pain and suffering.

The second phase includes the period during which Mr. Parkins was hospitalized at the VAMC in the Bronx. In this seven month period, Mr. Parkins continued to come to grips with his condition. He also endured various rehabilitative measures geared toward helping him adjust to life as a paraplegic. The court finds that $70,000 constitutes fair compensation for Mr. Parkins' pain and suffering while at the VAMC in the Bronx.

The third and final post-surgery phase is that involving the remaining two and a half years of Mr. Parkins' life. In these years, Mr. Parkins was primarily living at home. His paralysis continued to hinder nearly every aspect of his life. For this period, the court finds that a damages award of $250,000 is appropriate. The court concludes that plaintiffs are entitled to $370,000 in damages for Mr. Parkins' pain and suffering. *See, e.g., Ulrich v. Veterans Admin. Hosp.*, 853 F.2d 1078 (2d Cir.1988) (accepting $125,000 in damages for past pain and suffering to a victim who because of service related catatonic schizophrenia incurred an injury that rendered him a paraplegic); *Henderson v. Levy*, 183 Conn. 517, 441 A.2d 10 (1981) (accepting award of $400,000 to victim who due to defendant's negligence was rendered totally disabled).

Defendant claims that the court must reduce damages for pain and suffering to reflect Mr. Parkins' life expectancy had he not undergone thoracoabdominal surgery. Defendant's position is flawed because life expectancy ordinarily relates to the assessment of *future* damages for pain and suffering. For example, in *Powers*, the court determined that plaintiff's life expectancy was twelve years. 589 F.Supp. at 1102. The court then assessed damages in view of the likelihood that plaintiff's *future* pain and suffering would not outlast his life expectancy. The court did not factor plaintiff's life expectancy into its assessment of damages for *past* pain and suffering. *Id.* at 1107. In the present case, the issue before the court is the proper valuation of past pain and suffering. Accordingly, it is not necessary to account for Mr. Parkins' life expectancy in fashioning a damages award for pain and suffering. *See also, Petriello v. Kalman*, 215 Conn. 377, 397,

576 A.2d 474 (1990) (life expectancy statistics commonly used to assist trier of fact in measuring the loss a plaintiff is likely to sustain from the *future* effects of an injury).

### Loss of Consortium

■ The next damages issue relates to Mrs. Parkins' loss of consortium claim. Mrs. Parkins seeks $300,000 in damages for loss of consortium. Under Connecticut law, "a spouse may recover loss of consortium occurring during the period between the accident and the death of the accident victim." *Ladd*, 203 Conn. at 189, 523 A.2d 1301. Recovery should compensate for direct injury suffered by a spouse whose marital relationship changes in response to the victim's injuries. *Hopson v. St. Mary's Hosp.*, 176 Conn. 485, 493, 408 A.2d 260 (1979).

After Mr. Parkins' surgery, the relationship between him and Mrs. Parkins changed drastically. Before the surgery, Mr. and Mrs. Parkins enjoyed a solid marriage, cared for each other, and were able to have an intimate physical relationship. After the surgery, Mrs. Parkins became her husband's care taker. She was unable to sleep in the same bed with her husband or in the same room. She was unable to have an intimate physical relationship with her husband. The court concludes that under the circumstances an award of $150,000 is appropriate to compensate Mrs. Parkins for her loss of consortium.

### Set Off

■ The final issue pending before the court is whether and to what extent the court's calculation of damages should account for benefits paid to Mr. and Mrs. Parkins. The parties initially stipulated to a reduction in damages by $115,097.01 to reflect the payment of benefits. This figure represents the sum of (1) $87,039.01 in benefits paid to Mr. Parkins, pursuant to 38 U.S.C. § 1151 and (2) $28,058.00 in benefits paid to Mrs. Parkins, pursuant 38 U.S.C. § 1318. The court concludes that the total damages award shall be directly reduced by $115,097.01 to account for benefits paid to Mr. and Mrs. Parkins pursuant to §§ 1151 and 1318. See *Morgan v. United States*, 968 F.2d 200 (2d Cir.1992).

Defendant contends that, in addition to the set off, Mrs. Parkins' § 1318 benefits must cease as of the date of judgment and resume when the total amount of missed benefits equals the total damages award. By the express terms of § 1318, however, a suspension of benefits is warranted only if the award of damages is "based upon .. any cause of action for damages for the death of a veteran." Here, the court determined in its Memorandum of Decision that plaintiffs could not prevail on their wrongful death claim. Because the damages award is not linked to the death of Mr. Parkins, the court will not suspend Mrs. Parkins' § 1318 benefits.

### CONCLUSION

The court concludes that damages shall be awarded as follows:

| | |
|---|---|
| Lost Wages: | $ 29,120.00 |
| Economic Damages: | $ 69,448.77 |
| Pain and Suffering: | $370,000.00 |
| Loss of Consortium: | $150,000.00 |
| Costs: | $ 10,959.16 |
| | |
| **Total:** | **$629,527.93** |
| Less Credit for Benefits: | $115,097.01 |
| | |
| **NET JUDGMENT:** | **$514,430.92** |